AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**2004 Silver Four-door Chevrolet Cavalier, MD tag 5CW-W96**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I    GABRIEL ORTIZ    being duly sworn depose and say:

I am a(n)   Special Agent with the United States Postal Service, Office of Inspector General   and have reason to believe
(Official Title)

that  (name, description and or location)
on the property or premises known as

2004 Silver Four-door Chevrolet Cavalier, MD tag 5CW-W96, more fully described in Attachment A to the search warrant,

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

See Attachment B to the search warrant.

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of crime and other contraband and property designed or intended for use as a means of committing a criminal offense.

concerning a violation of Title 18 United States Code, Section(s) 1709. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    X  YES    ☐  NO

James A. Mitzelfeld
Assistant United States Attorney
(202) 514-7131

Signature of Affiant
GABRIEL ORTIZ, Special Agent
United States Postal Service, Office of Inspector General

Sworn to before me, and subscribed in my presence

at Washington, D.C.

Date

Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Gabriel Ortiz, being duly sworn, do depose and state as follows:

## I.   INTRODUCTION

1.   I am a duly appointed Special Agent ("SA") of the United States Postal Service ("USPS") Office of Inspector General ("OIG"), and have been so employed since September 2006.  Prior to working for the USPS OIG, I was employed as a SA with the Department of the Treasury OIG for four years.  I am currently assigned to the Northern Virginia office, Internal Mail Theft team.  As part of my duties, I investigate a wide variety of violations of federal criminal laws, including violations of Title 18 U.S.C. § 1709 (Theft of Mail Matter by Officer or Employee).

2.   My law enforcement training and experience has included the preparation, presentation, and service of criminal complaints, arrests, and search warrants.  I have received training in general law enforcement and criminal investigations, including investigations of theft of mail.  I have conducted numerous criminal investigations related to this crime that have resulted in the arrests and convictions of the offenders involved.

3.   The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers.  I have also consulted with fraud investigators from the Target Corporation ("Target").  All observations referenced in this affidavit that were not personally made by me were related to me by the person(s) who made such observations.

4.   This affidavit does not contain every detail of every aspect of this investigation, but rather sets forth those facts that I believe are necessary to demonstrate probable cause to search the locations and seize the property described below.

5.      Based upon the investigation I conducted, I believe that the facts set forth in this affidavit establish that there is probable cause to believe that within the Eastern District of Virginia and elsewhere, UNIQUCA L. TAYLOR ("TAYLOR"), being a Postal Service employee, unlawfully, knowingly, and intentionally embezzled letters, post cards, packages, bags, and mail, and articles and things contained therein entrusted to her and which came into her possession intended to be conveyed by mail, and stole, abstracted, and removed from such letters, packages, bags, and mail, articles and things contained therein, in violation of Title 18, United States Code, Section 1709. There is probable cause to believe that within the District of Columbia, the evidence, fruits, and instrumentalities of these offenses, as more fully described in Attachment B to the search warrants and to this affidavit, presently are located at xxxx xxxxxxx xxxxxx, xx, Washington D.C. 20002, and in a four-door silver Chevrolet Cavalier, model year 2004, with Maryland tag xxx-W96, registered to UNIQUCA L. TAYLOR, which are more fully described in Attachment A to the search warrants.

## II.     STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

### A.      Initiation of Investigation

6.      On or about February 14, 2008, a batch of discarded mail was recovered from an alley near Neal Street, N.E., Washington, D.C. 20002, by law enforcement officers. This recovered mail was turned over to me for investigation purposes.

7.      My review of the approximately 234 pieces of discarded mail revealed that the majority of the First Class mail had been opened, with the contents of each letter separated from its originating envelope. I determined that the recovered mail had been collected at the Engleside Post Office in Alexandria, Virginia, within the Eastern District of Virginia, but had been removed from the facility before it was processed and delivered. All of the mail that had

metered postage stamps contained the 22309 zip code, which is associated with the Engleside Post Office, and almost all of the return addresses on the envelopes also contained the zip code 22309, which is serviced by the Engleside Post Office. I also determined, due to the lack of markings on the envelopes by the Engleside Post Office's related Postal Distribution Facility and the absence of any cancellation markings, that the recovered mail had never been delivered to the intended recipients.

8. The vast majority of the recovered mail consisted of birthday and Valentine's Day cards; the remaining pieces of opened mail included fifteen loose bank checks, one money order, an Army and Airforce Exchange Service ("AAFES") gift card, two political endorsement flyers, and two receipts. The only unopened pieces of mail resembled business mailings and outbound bills. Twenty-six pieces of mail had metered postage, which had been paid at the Engleside Post Office on February 9, 2008, February 12, 2008, and February 13, 2008.

9. On or about February 21, 2008, another batch of discarded mail was recovered in a USPS Collection Box (e.g., a standard blue, three feet in height, metal mail collection box) on the corner of Neal Street and Trinidad Street, NE, Washington, D.C. 2002. This batch of recovered mail included fourteen pieces of First Class mail that consisted of greeting cards, which had been opened and separated from their originating envelopes. There were also two loose bank checks bearing dates of February 18, 2008, and February 19, 2008. As with the first batch of recovered mail, the return addresses on the envelopes indicated the zip code serviced by the Engleside Post Office: 22309. In addition, the envelopes contained no markings indicating that the mail had been processed nor cancelled; thus, the mail appeared to have been removed from the post office prior to processing or delivery.

10.     Shortly after the recovery of the first batch of discarded mail, in February 2008, I contacted the Station Manager of the Engleside Post Office regarding the recovered mail. A review of the employees' work schedules and the Time and Attendance Collection System Records for the Engleside Post Office revealed that, for the dates of the recovered mail with metered postage (February 9, 12, and 13, 2008), TAYLOR was the Postal Service employee responsible for performing the mail closeout function and preparing the mail for transport to the processing facility on those dates.

11.     TAYLOR's personnel file revealed that she had been employed at the Engleside Post Office since July 2007. The Station Manager confirmed that TAYLOR is employed as a Distribution and Delivery Clerk at the Engleside Post Office. The responsibilities of a Distribution and Delivery Clerk include the preparation of collected mail, which for the Engleside Post Office includes mail deposited in the Engleside Post Office and mail received by the Mail Carriers that service the 22309 zip code, for transport to the Engleside Post Office's related Processing and Distribution Center.

12.     The Engleside Post Office Station Manager requested a current address from TAYLOR. TAYLOR indicated that her current residence is at xxxx xxxxxxx xxxxxx, xx, Washington, D.C. 20002. The alley adjacent to this residence is the same alley near Neal Street, NE, Washington, D.C. 20002, where the first batch of discarded mail was recovered on February 14, 2008. The USPS Collection Box, in which the second batch of discarded mail was recovered on February 21, 2008, is one block from this residence.

B.     **Investigation of TAYLOR**

13.     A review of multiple days of surveillance video of TAYLOR sorting mail at the Engleside Post Office, collected using the Engleside Post Office surveillance cameras, revealed

TAYLOR setting aside pieces of mail, concealing them during her hours of work, and then secreting them in personal items or under her clothes before exiting the post office.

14. For example, on February 29, 2008, TAYLOR positioned a mail tub (e.g., a white opaque plastic tub used to hold mail in various stages of sorting and preparation) near her work station, within a canvas cart. TAYLOR appeared to visually identify greeting cards by primarily focusing on large, bright colored envelopes; TAYLOR would then run her thumb and index finger along the edge and body of the greeting card, presumably to determine whether the card contained monetary items, such as gift cards. Once TAYLOR identified a piece of mail she wished to remove, TAYLOR would place the mail under the predetermined mail tub within the canvas cart, and disguise the removed mail by stacking other empty mail tubs on top of the mail tub she was using to cover the removed mail. TAYLOR would repeat this process throughout the course of her work hours, especially during times when the presence of other employees at the Post Office was at a minimum.

15. On surveillance video from March 11, 2008, TAYLOR was observed secreting some mail within her shirt. At the end of her shift, TAYLOR was observed taking into the bathroom the mail tub in which she had been setting aside mail throughout her shift. When TAYLOR exited the bathroom, she was no longer carrying the mail tub nor any personal items.

16. To confirm TAYLOR's activities, I placed "test" greeting cards containing Target gift cards in the mailbox at the Engleside Post Office on two days when TAYLOR was working: February 26, 2008, and February 27, 2008. The Target gift cards were purchased at Target using USPS OIG funds, and the corresponding gift card numbers were provided to the Loss Prevention Unit of Target Corporation for tracking purposes.

17.     On March 10, 2008, I received surveillance images and purchase records from Target Securities associated with the use of the USPS OIG gift cards. Upon review of the images, I was able to identify TAYLOR as the individual that used four Target gift cards that had been placed in the "test" greeting cards. TAYLOR used these gift cards at a Target in Forestville, Maryland, on two separate days: February 26, 2008, (when TAYLOR was still in her USPS uniform) and February 27, 2008. The purchase records indicate that, in addition to the Target gift cards belonging to the USPS OIG, TAYLOR used several other Target gift cards to complete her purchases of DVDs, CDs, bedding, and personal accessories, for a total amount of $273.73 in merchandise on February 26, 2008, and $49.43 in merchandise on February 27, 2008.

### III.    SEARCH WARRANTS

#### A.    Properties to Be Searched

18.     On March 11, 2008, I and other USPS OIG agents conducted a mobile surveillance of TAYLOR. At approximately 6:30 p.m., TAYLOR exited the Engleside Post Office and entered a four-door silver Chevrolet Cavalier, model year 2004, with Maryland tag xxx-W96. TAYLOR was not observed carrying any personal items as she left the Post Office, but on surveillance video from inside the Post Office, was captured placing what appeared to be mail under her shirt prior to exiting the Post Office. TAYLOR traveled southbound on the Richmond Highway (Rt. 1 N) to the Capitol Beltway (I-495 E / I-95 N). While stopped at a traffic light en route, a USPS OIG agent observed TAYLOR opening and rifling through items that appeared to be envelopes, which were located in her lap. The mobile surveillance continued onto the Anacostia Parkway (I-295 N); TAYLOR exited at Benning Road and shortly thereafter arrived at xxxx xxxxxxx xxxxxx, xx, Washington, D.C. 20002, exited the vehicle, and entered

the residence. This address, xxxx xxxxxxx xxxxxx, xx, Washington, D.C. 20002, is the same address TAYLOR provided her Station Manager when asked for a current address.

19.     Surveillance of this residence was also conducted on other dates, including March 11, March 14, and March 28, 2008, and I observed the 2004 silver Chevrolet Cavalier with Maryland tag xxx-W96 parked on xxxxxxx xxxxxx, xx, in front of the residence on two of the dates and across the street from the residence on the other date. A more detailed description of the residence and the automobile is provided in Attachment A to the search warrants.

**B.     Items to Be Seized**

20.     Based upon my training and experience, I know that individuals involved in mail theft often keep and maintain during the course of their mail theft scheme such evidence as: mail not addressed to the residence at which they reside, mail not addressed to individuals living within the residence, greeting cards and personal letters inscribed to individuals not living in the residence, loose cash, used and unused gift cards, bank checks, bank cards and money orders issued to individuals not living in the residence, identification documents and cards not issued to individuals living in the residence, gift card receipts, items purchased with gift cards, as well as other papers relating to the stealing, abstracting, or removal of letters, packages, bags, or mail, or any article or thing contained therein.

21.     In addition, based upon my training and experience, I know that individuals who engage in theft of mail often use computers to convert the monetary devices removed from stolen mail by ordering products online and paying for them with the stolen gift cards. I believe that if TAYLOR used a computer or computers or personal digital assistant(s) with internet access capabilities to convert such monetary devices by ordering products online, it is likely that electronic records of those transactions are stored on such computer(s) and personal digital

assistants(s).

22.    I seek authorization, therefore, to search for records and items related to the stolen mail, its contents, and any fruits of TAYLOR's conversion of said contents, as described above. Such items are more fully described in Attachment B to the search warrants. I also seek authorization to seize items including any hardware, software, documentation, and other items needed to conduct an examination. Such items are further described in Attachment B to the search warrants. Based upon my training and experience, I know that it is not always possible to search computer equipment for data during the search of the premises, and so such items may need to be seized so that they can be examined in a controlled environment. Those reasons include the following:

    a.    Imaging and searching computer systems is a highly technical process that requires specific expertise and specialized equipment. It often is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search of all of the many types of computer hardware and software in use today. Because computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement lab, often is essential to conducting a complete analysis of the equipment and storage devices from which the data will be extracted.

    b.    The volume of data stored on many computer systems and storage devices often is too large to permit a thorough search for data during the physical search of the premises.

    c.    Computer users can use a number of methods to conceal data within computer equipment and storage devices, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user

can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Because these and other concealment strategies may be employed by a computer user, a substantial amount of time may be necessary to extract and sort through data that are concealed or encrypted to determine whether it is evidence, contraband or the instrumentality of a crime.

   23. Based upon my training and experience, and on information related to me by agents and others involved in the forensic examination of computers, I also know that to search for electronic evidence relating to the crimes described in this affidavit, law enforcement personnel may need to seize the following items:

   a. Computers, including programs and data on those computers, as well as personal digital assistants with internet access capabilities;

   b. Computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, CD burners, printers, plotters, encryption devices, and scanners; and

   c. Physical keys, encryption devices, and similar physical items that are necessary to access the computer equipment and personal digital assistants with internet access capabilities.

## IV. CONCLUSION

   24. Based upon the foregoing, I believe that there is probable cause to believe that, in Alexandria, Virginia, within the Eastern District of Virginia and elsewhere, UNIQUCA L. TAYLOR, a United States Postal Service employee, committed Theft of Mail Matter in violation of Title 18 U.S.C. § 1709. Furthermore, based on the foregoing, I believe there is probable cause to believe that the properties described in Attachment A to the search warrants, which are a house located at xxxx xxxxxxx xxxxxx, xx, Washington, D.C. 20002, and a 2004 silver

Chevrolet Cavalier with Maryland tag xxx-W96, contain evidence, contraband, fruits, and instrumentalities pertaining to violations of Title 18 U.S.C. § 1709, as described in Attachment B to the search warrants. I therefore request that search and seizure warrants be issued for the properties described in Attachment A to the search warrants.

    I affirm under penalty of perjury that the facts and circumstances outlined in this affidavit are true and accurate to the best of my knowledge and belief.

                                                     _____
                                                     Gabriel Ortiz
                                                     Special Agent
                                                     U.S. Postal Service, Office of Inspector General

SUBSCRIBED and SWORN to before me
this 1st day of April, 2008.

_____

UNITED STATES MAGISTRATE JUDGE
District of Columbia

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

1. 1225 Staples Street, NE, Washington, D.C. 20002, is a two story row home, and is the fourth row home on the east side of Staples Street. It is grey in color with maroon shutters, and it includes an elevated basement. The residence is separated by a low chain-link fence in both the front and rear of the residence. The address of the residence is located on a white decor board, bearing the notation: "1225 Staples Street N.E."

2. 2004 silver, four-door, Chevrolet Cavalier, Maryland tag 5CW-W96, registered to UNIQUCA L. TAYLOR. The vehicle is a four-door sedan, and has been identified as the vehicle used to transport stolen mail from the Engleside Post Office to TAYLOR's residence, 1225 Staples Street, NE, Washington, D.C. 20002. The vehicle has been observed to be parked on Staples Street, NE, either in front of, or nearby, the 1225 Staples Street, NE, residence.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

All fruits, instrumentalities and evidence of Theft of Mail Matter, in violation 18 U.S.C. § 1709, for the time period July 2007 through the present, including:

1. All stolen mail matter, including mail not addressed to 1225 Staples Street, NE, Washington, D.C. 20002, or the residents living at the address, as well as greeting cards and personal letters inscribed to individuals not living at the residence.

2. All monetary devices, including loose cash, money orders, used and unused vendor gift cards, bank checks not issued to the residents of the address, credit cards and/or bank checking cards not in the names of individuals residing at the address, identification documents and cards not issued to individuals living in the residence, and any records of purchase and/or sale of property or merchandise, including receipts, invoices, records, electronic, and physical messages, related to the use of the listed monetary devices, as well as other papers relating to the stealing, abstracting, or removal of letters, packages, bags, and mail, and any article and thing contained therein.

3. All merchandise and goods, as well as the boxes or other packaging for any such merchandise or goods, that may have been purchased with the monetary devices stolen from the mail matter, including the items purchased with the gift cards belonging to USPS OIG.

4. Records, notes, calendars, journals, and personal papers documenting the theft of mail and monetary devices.

5. Items relating to computers, including:

    a. Computers, Personal Data Assistants (PDAs) with internet access capabilities, and related equipment capable of being used to commit, further or store evidence of

the offenses listed in the affidavit, including programs and data on those computers or devices;

  b. Computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, CDs, flash drives, thumb drives, floppy disks, docking stations, monitors, CD burners, printers, plotters, encryption devices, and scanners;

  c. Computer software including any programs used to run operating systems, control peripheral equipment, applications, utilities, scripts, compilers, interpreters, and communications programs, as well as any programs designed to assist in the defeat of any security/protective feature in place to prevent the unauthorized copying, distribution, and/or activation of software;

  d. Computer passwords and other data security devices that are designed to restrict access or to hide computer software, documentation, or data; and

  e. Physical keys, encryption devices, and similar physical items that are necessary to access the computer equipment, personal digital assistants with internet access capabilities, or data.